## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

MARIA FORNES-PIERANTONI
5701 Woodlawn Gable Drive
Apt. 1
Alexandria, VA 22309

      Plaintiff,

  v.

THE UNITED STATES OF AMERICA

Serve:

      Channing D. Phillips, Esq.
      United States Attorney for the
      District of Columbia
      555 4th Street N.W.
      Washington, DC 20530

      and

      Hon. Jeffrey B. Sessions,
      Attorney General of the United
      States
      Department of Justice
      950 Pennsylvania Avenue, N.W.
      Washington, D.C. 20530,

      Defendant

Case No.: _____

## COMPLAINT

Plaintiff Maria Fornes-Pierantoni, by undersigned counsel, hereby files this Complaint against the Defendant United States of America under the Federal Tort Claims Act for medical and related expenses and other damages incurred and sustained by her, and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Maria Fornes-Pierantoni is a resident of the Commonwealth of Virginia.

2.      Defendant United States of America, at all relevant times, including in February 2003 through August 2007, controlled and operated the Walter Reed Army Medical Center in Washington, D.C. (hereinafter "WRAMC"), and employed the health care providers who provided care at that facility to Maria Fornes-Pierantoni.

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§1346(b) and 2671-2675(a).

4.      Venue for this action is appropriately in this District pursuant to 28 U.S.C. §1402, upon information and belief as some or all of the acts of negligence complained of occurred in this District.

## PROCEDURAL HISTORY

5.      At all times between February 1972 through February 1995, Ms. Maria Fornes-Pierantoni was a member of the United States Army serving in the fields of computer operations and support, data processing, and information technology.  Plaintiff retired from active duty service in February 1995.

6.      Pursuant to 28 U.S.C. § 2675(a), on July 28, 2009, Plaintiff filed an Administrative Claim for Injury, *pro se*, (Form SF-95) with the U.S. Department of the Army, Walter Reed Army Medical Center, Office of the Judge Advocate General, specifically alleging the facts herein.  (Attached as Exhibit 1)  The United States of America acknowledged its receipt of Ms. Fornes-Pierantoni's Form SF-95 claims by

letter dated August 3, 2009. (Exhibit 2) On December 4, 2014, undersigned counsel
filed an amendment to the Form SF-95 by letter to the Department of the Army, U.S.
Army Claims Service, Office of the Judge Advocate General, which was signed and
accepted the same day by Thomas J. Jackson, Esq. (Exhibit 3)

7.     To date, the United States of America has neither denied nor taken any final
agency action on Plaintiff's claim.

8.     More than six months have expired since the filing of Plaintiff's claim and,
accordingly, all administrative remedies have been exhausted.

## FACTUAL ALLEGATIONS

9.     In February 2003, Ms. Fornes-Pierantoni's laboratory studies showed
elevated serum total protein levels of 8.4 (normal 6.3-8.2 g/dL). By January 2004, her
serum total protein levels had increased to 8.8 g/dL.

10.     By December 4, 2004, Ms. Fornes-Pierantoni had two of the classical
pathognomonic findings of multiple myeloma: (i) an elevated and rising total serum
protein level with normal albumin; and (ii) unexplained lytic bone lesions.

11.     A CT scan of Ms. Fornes-Pierantoni's abdomen/pelvis performed at
WRAMC on December 21, 2004 noted lucencies in the iliac bones, left greater than right,
that were sub-centimeters in size. These abnormal lucencies had been seen on the
previous CT scans performed at WRAMC dating back to March 10, 2004. The
December 21, 2004 CT scan was interpreted by Marcia Javitt, M.D. and the March 10,
2004 CT scan was interpreted by J. Richard Choi, M.D. Because there was no known
cause for these bone lesions, the December 2004 radiology report specifically stated:

3

"Clinical correlation is recommended." The United States of America failed to investigate the cause of the elevated protein levels and lytic bone lesions that were indicative of Multiple Myeloma.

12.     Except during a period of acute choleithiasis in March 2004, Ms. Fornes-Pierantoni's total protein levels continued to progressively increase during multiple laboratory assessments over the following years, peaking at approximately 12.2 on or around April 7, 2007. Specifically, her lab results were as follows:

> 02/19/2003:   Total Protein 8.4, (nml ≤ 8.2); Albumin 4.0;
>
> 11/18/2003:   Total Protein 8.7 (nml < 8.2); Albumin 4.6;
>
> 01/4/2004:    Total Protein 8.8 (nml < 8.2); Albumin 4.4;
>
> 10/4/2004:    Total Protein 9.2, (nml < 8.2); Albumin 4.5;
>
> 01/15/2005:   Total Protein 9.5, (nml < 8.2); Albumin 4.5; and
>
> 04/07/2007:   Total Protein 12.2, (nml < 8.5); Albumin 4.4.

13.     During this time period, Ms. Fornes-Pierantoni suffered from continued skeletal destruction, bone loss, and progression of her Multiple Myeloma.

14.     In January 2005, Ms. Fornes-Pierantoni presented to the WRAMC General Surgery Clinic with complaints of chronic right shoulder pain. She was evaluated by Bradley R. Zagol, M.D. and George Peoples, Jr., M.D., who both failed to appreciate, evaluate and act upon the long-standing presence of her elevated total protein levels and unexplained bone lucencies.

15.     In February 2005, Ms. Fornes-Pierantoni was evaluated by Dr. Craig Shriver and Dr. Asnat at WRAMC. The records reflect that Dr. Gureny discussed the

4

patient's case with Dr. Peoples; however, no evaluation of the patient's abnormal total protein levels or bone lucencies was undertaken.

16.     On April 7, 2005 a CT of the Abdomen/Pelvis was performed at WRAMC and interpreted by Michael J. Walden, M.D.  On October 25, 2005, another CT of the Abdomen/Pelvis was performed at WRAMC and interpreted by Shephard S. Kosut, M.D. Dr. Kosut recommended follow-up at the discretion of the clinical provider.  The United States of America failed to appreciate, evaluate and act upon the abnormal bone lucencies, abnormal total protein levels, and chronic right shoulder pain that were highly consistent with Multiple Myeloma.

17.     Ms. Fornes-Pierantoni presented to her physicians at the Walter Reed Army National Medical Center, Family Practice Clinic in Woodbridge, Virginia on October 4, 2006 complaining of upper back pain when turning her neck on October 4, 2006.  This pain likely represented symptoms caused by the ongoing destruction of the C3 and C4 cervical vertebrae by the Multiple Myeloma.

18.     New anemia and kidney dysfunction was discovered in May and June of 2007.  Both anemia and kidney dysfunction are characteristic of Multiple Myeloma.

19.     On July 10, 2007, Ms. Fornes-Pierantoni underwent a CT scan of the Abdomen/Pelvis at WRAMC which identified that her osseous structures were riddled with hypodense lesions throughout.

20.     Ms. Fornes-Pierantoni visited her primary care physician, Elizabeth Bennett, M.D., on July 20, 2007, who noted she had been having fatigue and anemia over the prior six months, without weight loss.  This fatigue was likely the result of the

Multiple Myeloma itself and the anemia and kidney failure caused by the Multiple Myeloma.

21.     On August 3, 2007, a skeletal survey demonstrated multiple osteolytic bone lesions and a pathologic fracture of her third cervical vertebrae that was suspicious for Multiple Myeloma.  Her first bone marrow biopsy, performed on August 3, 2007, confirmed the diagnosis of malignant Multiple Myeloma.

22.     Ms. Fornes-Pierantoni's disease was advanced at the time of her diagnosis. She had stage III multiple myeloma, the most advanced stage of multiple myeloma.  The very extensive bone lesions that she had at the time of diagnosis contributed to the staging of her disease as advanced.

23.     Ms. Fornes-Pierantoni underwent treatment with the chemotherapeutic agents, thalidomide and dexamethasone, followed by a stem cell transplantation on January 6, 2008.  She was subsequently begun on the experimental chemotherapy medication, lenalidomide, as part of a drug trial (CALGB-100104) in May 2008.  She has remained on lenalidomide since that time with her S-PEP levels being monitored for evidence of cancer progression.  These treatment modalities and specialized drugs are very expensive and carry certain risks and adverse effects which require that Ms. Fornes-Pierantoni remain under close medical supervision.

24.     The extensive bone damage noted at the time of her diagnosis has persisted. Plaintiff's WRAMC oncologist, Pranav D. Patel, M.D., documented on August 18, 2009 that her cervical spine fracture has caused on-going pain, stiffness, and decreased range of motion, and remains uncorrectable surgically due to its location and the degree of

damage that has occurred. A skeletal survey performed on December 18, 2012 notes diffuse mottled lucencies of the clavicles (collarbones), ribs, calvarium (skull), spine, bilateral femurs (upper leg bones), pelvis, bilateral humeri (upper arm bones), tibias (lower leg bones), left femoral head (hip joint) and bilateral old rib fractures.

25.     On a CT scan in July of 2013, innumerable lytic lesions in her skeleton (including the pelvis/iliac bones) were found, and destruction of two cervical (neck) spinal bones (vertebra), specifically C3 and C4.

26.     Skeletal surveys performed on November 27, 2013, December 29, 2014, December 28, 2015, and January 9, 2017 were unchanged from the 12/18/12 study.

27.     As a direct and proximate result of the Defendant's negligence, Ms. Fornes-Pierantoni has continued to have severe orthopedic problems since the time of her diagnosis, stemming from the delay in diagnosing and treating her Multiple Myeloma resulting in extensive bone destruction. The Defendant's delay in diagnosing and treating her Multiple Myeloma resulted in the development of serious osteolytic lesions throughout her skeleton, including the destruction of her C3 vertebral body that has caused her to live with ineffective support of her cervical spinal cord and the constant threat of impending quadriplegia. These osteolytic lesions have caused her to live with chronic pain in the neck, shoulders, arms and hip. She has limited mobility due to the inoperable fracture of her C3 cervical vertebrae which requires that she wear a cervical collar because of her spinal instability. She remains at high risk for further neurological injuries and impairment related to the permanent osteolytic lesions of her vertebral bodies. She is unable to drive and she is largely restricted to her home. She is unable to

7

work, perform many of the tasks of daily life, engage in the normal recreational activities she previously enjoyed, all of which has led to prolonged depression and anxiety, for which she takes daily medication.

28.     Ms. Fornes-Pierantoni has suffered extensive permanent injuries as a direct and proximate result of the negligence of the United States of America, including pain and suffering, emotional distress and embarrassment, past and future medical bills, past and future lost wages, and other damages past and future.

## COUNT I
## (Medical Negligence)

29.     At all times mentioned herein, the medical care provided to Maria Fornes-Pierantoni by the United States of America was provided by agents, employees, servants and representatives of this defendant, all acting within the scope of their employment or agency.  This includes, but is not limited to, the care provided by Dr. Peoples, Dr. Zagol, Dr. Shriver, Dr. Gureny, Dr. Walden, and Dr. Kosut at the Walter Reed Army Medical Center who were employees, agents, servants and/or ostensible agents of the United States of America operating within the course and scope of their employment at all times relevant hereto.

30.     A health care provider/patient relationship existed between the United States of America, its agents, employees, representatives, and/or servants, and Maria Fornes-Pierantoni at all times relevant herein.  At all times in the care and treatment of Plaintiff, Maria Fornes-Pierantoni, the United States of America, by and through its employees, agents, servants and/or ostensible agents, were under a duty to exercise that

8

degree of care and skill ordinarily exercised by health care providers in the same or similar circumstances.

31.     The defendant, United States of America, owed a duty to Ms. Fornes-Pierantoni, including a duty to perform appropriate diagnostic tests and procedures to determine her condition, to appropriately diagnose such condition, and to timely employ appropriate treatments, procedures, imaging, surgeries, and/or medications to treat and manage such condition without injury to Ms. Fornes-Pierantoni.

32.     The United States of America's health care providers failed to properly assess, monitor, and treat Ms. Fornes-Pierantoni's condition in light of the known circumstances.

33.     The United States of America's health care providers negligently failed to recognize clear signs and symptoms of Ms. Fornes-Pierantoni's Multiple Myeloma, and failed to provide appropriate monitoring, referrals, and treatments in light of these findings.  The United States of America's health care providers failed to intervene and treat Plaintiff's Multiple Myeloma in an appropriate and timely manner in light of the signs and symptoms.

34.     The United States of America, acting directly and through its actual or ostensible agents and employees, violated the standards of care applicable to the care and treatment of the Plaintiff Maria Fornes-Pierantoni during the period February 2003 through August 2007 in the following respects:

   a.   failure to exercise due care in the evaluation, diagnosis, and treatment of Plaintiff;

b. failure to develop an appropriate differential diagnosis and treatment plan for Plaintiff in light of her unexplained and persistently elevated serum total proteins which progressively increased during multiple laboratory assessments, and to appropriately act upon the Plaintiff's symptomatology that was indicative of Multiple Myeloma;

c. failure to develop an appropriate differential diagnosis and treatment plan for Plaintiff in light of her unexplained and abnormal bone lucencies, and to appropriately act upon the Plaintiff's symptomatology that was indicative of Multiple Myeloma;

d. failure to timely pursue a diagnosis for the condition of Multiple Myeloma and to initiate aggressive treatment beginning in February 2003 and every subsequent month that Ms. Fornes-Pierantoni presented to the health care providers of the United States of America, including those at the Walter Reed Army Medical Center;

e. failure to timely initiate, recommend and/or perform appropriate follow-up diagnostic studies and procedures (e.g., serum immunoglobulin protein electrophoresis, urine analysis for unusual proteins such as the Bence-Jones proteins and other immunoglobulins and free chains, bone marrow biopsy, skeletal survey, and other indicated diagnostic tests) which would have timely diagnosed her Multiple Myeloma and resulted in aggressive treatment and comprehensive follow-up with serial laboratory and radiological evaluations;

f. failure to document and record pertinent information regarding Plaintiff's clinical condition;

g. failure of the treating physicians to communicate with each other regarding Plaintiff's clinical symptomatology, laboratory and radiological abnormalities, with a view towards implementing a plan of care to urgently diagnose and treat her condition before her bones were permanently injured;

h. failure to conduct a proper examination, evaluation, history, and investigation of Plaintiff's complaints and medical condition beginning in February 2003;

i. failure to properly instruct Plaintiff on the signs and symptoms of Multiple Myeloma, as well as, the urgent need for referrals to appropriate specialists at WRAMC and elsewhere beginning in 2003, and to have such specialists examine, assess, and treat Plaintiff's condition in a timely manner;

j. failure to timely detect and treat Plaintiff's Multiple Myeloma, whereby it would have been diagnosed and treated without resulting in the serious bone

destruction, incapacitating cervical fracture, and other bodily injury, pain, and suffering;

k. failure to appreciate and appropriately act upon laboratory and radiological abnormalities, as well as clinical symptomatology in a timely manner, all of which were indicative of Multiple Myeloma; and

l. were otherwise negligent.

35.    Ms. Fornes-Pierantoni had a very good partial response to her Multiple Myeloma therapy, which would have prevented the development of her extensive and debilitating bone lesions if administered timely.  In addition, bisphosphonates are recommended for patients with multiple myeloma who do not have lytic bone lesions on standard radiography studies to prevent the development of bone lesions, and such prophylactic use of bisphosphonates earlier in her case likely would have prevented the development of these bone lesions.  Her bone lesions have not progressed since beginning her treatment, but have never healed (and once present would not be expected to improve once treatment was initiated).

36.    Plaintiff further alleges that the negligent acts and/or omissions committed by the Defendant directly and proximately caused or contributed to the significant delay in the diagnosis and treatment of her condition, a progression of her Multiple Myeloma to an advanced stage; physical pain and injuries; has required and will require significant medical and related care and treatment including chemotherapy, stem cell transplantation, multiple medication regimens, and repeated hospitalizations; extensive bone destruction; chronic pain in her neck, shoulders, arms and hips; diminished mobility and ambulatory deficits; spinal instability and an inoperable fracture of her C3 cervical vertebrae;

inability to drive; social isolation; inability to perform many of the tasks of daily life requiring attendant care; inability to engage in the normal recreational activities she previously enjoyed; and pain, suffering and mental anguish, all of which have led to prolonged depression and anxiety.

37.     As a further direct and proximate result of the negligence of the Defendant, Ms. Fornes-Pierantoni will continue to suffer severe and permanent injuries, has required and will continue to require life-long medical care, attendant care, and other related services, including physical, occupational, and psychological care, and has suffered and will suffer lost income, lost earning capacity, severe physical pain, disfigurement, associated embarrassment, and inconvenience, including permanent and complete disability from her prior gainful employment and successful career, as well as a variety of activities and occupations.

38.     As a further direct and proximate result of the negligence of the Defendant, Ms. Fornes-Pierantoni is likely to suffer progression of her Multiple Myeloma and potential premature death. Plaintiff has also incurred substantial medical and related expenses and will incur future medical expenses and related damages as a consequence of Defendant's negligence.

WHEREFORE, Plaintiff Maria Fornes-Pierantoni demands judgment against the United States of America for all damages recoverable under District of Columbia law, $10,000,000.00 plus costs and interest, and such other relief as may be just and proper.

## COUNT II
### (Lack of Informed Consent)

39.     Plaintiff incorporates herein by reference the allegations contained in numbered paragraphs 1 through 38.

40.     The defendant, United States of America, by and through its agents, employees, representatives, and/or servants, owed a duty to Ms. Fornes-Pierantoni, to provide her with informed consent regarding her potential diagnoses and treatment options for her signs and symptoms that were indicative of Multiple Myeloma.

41.     The defendant, United States of America, breached this duty to Plaintiff Ms. Fornes-Pierantoni.  Plaintiff was never informed that her clinical signs and symptoms were consistent with Multiple Myeloma, nor was she given the option to undergo further diagnostic testing and assessment to rule out Multiple Myeloma at any time during the period 2003-2006.

42.     Had Ms. Fornes-Pierantoni been informed of her risks of the recognized options and the known risks, she would have elected to be evaluated, admitted if necessary, and undergo diagnostic testing that would have made a timely diagnosis of her condition prior to its belated diagnosis, allowing for meaningful treatment and intervention that would have prevented her permanent injuries.

43.     Any reasonable patient would have elected to be evaluated, admitted if necessary, and undergo diagnostic testing to rule in Multiple Myeloma and thereafter, to undergo timely and proper treatment, if the options and risks had been explained in a timely fashion.

44.     The failure to provide informed consent was a proximate cause of injuries and damages suffered by Plaintiff Maria Fornes-Pierantoni.

45.     As a result of Defendant's failure to provide Plaintiff with sufficient informed consent, Defendants are liable for all the damages and injuries that resulted from the negligence at issue, including but not limited to past and future economic damages, physical pain and injury, and severe and enduring emotional distress.

WHEREFORE, Plaintiff Maria Fornes-Pierantoni demands judgment against the United States of America for all damages recoverable under District of Columbia law, $10,000,000.00 plus costs and interest, and such other relief as may be just and proper.

Respectfully submitted,

Laurie A. Amell, Esq.
lamell@bertramamell.com
Catherine Bertram Esq.
cbertram@bertramamell.com
Bertram Amell PLLC
1100 Vermont Avenue NW
Suite 500
Washington, DC 20005
Telephone:  (202) 803-5800
Facsimile:   (202) 803-6814
*Attorneys for Plaintiff*